6       **IN THE UNITED STATES DISTRICT COURT FOR THE**

7              **EASTERN DISTRICT OF CALIFORNIA**

8

9    DAVIS MORENO CONSTRUCTION,     )    No. CV-F-08-854 OWW/SMS
     INC., a California             )
10   corporation,                   )    MEMORANDUM DECISION DENYING
                                    )    DEFENDANT'S SECOND MOTION TO
11                                  )    DISMISS FOR LACK OF PERSONAL
                                    )    JURISDICTION AND FOR CHANGE
12              Plaintiff,          )    OF VENUE OR TO TRANSFER
                                    )    (Doc. 29)
13        vs.                       )
                                    )
14                                  )
     FRONTIER STEEL BUILDINGS       )
15   CORPORATION, a Colorado        )
     corporation,                   )
16                                  )
                                    )
17              Defendant.          )
                                    )
18   _____    )

19        Before the Court is Defendant Frontier Steel Buildings

20   Corporation's (hereafter "Frontier's) second motion to dismiss

21   for lack of personal jurisdiction, for change of venue or to

22   transfer action.

23        A.   <u>BACKGROUND</u>.

24             1.   <u>Procedural Background</u>.

25        On June 18, 2008, Plaintiff Davis Moreno Construction, Inc.

26   (hereafter "Davis" or "DMCI") filed a Complaint for Damages for

                              1

Breach of Contract.

Frontier filed a motion to quash, to dismiss for lack of personal jurisdiction, and for change of venue or transfer for forum non conveniens in August 2008.  The motions were briefed and heard on February 2, 2009.  Before the motions were resolved by the Court, Davis filed a First Amended Complaint for Damages ("FAC"), alleging claims for breach of contract; to disgorge compensation paid pursuant to California Business & Professions Code § 7031(b); for violation of California Business & Professions Code § 17200; for fraud - nondisclosure of material fact; and for breach of the covenant of good faith and fair dealing.[1]  Because of the filing of the FAC, Frontier's earlier motions were denied as moot.

The FAC alleges that the action concerns a public works project for the Kern Unified School District for the construction of its Records Retention Facility (the "Project") in Kern County, California.  Davis submitted a bid to the School District and was awarded the prime contract in connection with the Project.  As the prime contractor, Davis engaged subcontractors and suppliers, including Frontier "who submitted a bid to DCMI offering to construct and erect a building for the Project."  The FAC alleges the following facts:

> 8.  On or about 1-10-08, DMCI and FRONTIER
> entered into a contract, in the form of

---

[1]The new causes of action are based on Davis' allegation that Frontier did not disclose that it did not possess a California Contractor's License.

several documents, for FRONTIER to provide certain supplies to DMCI for the Project. A true and correct copy of said contract is attached and incorporated herein by this reference as 'Exhibit A.'[2]

9.  The contract specifically required in paragraph (3) strict time requirements for the submission and performance of the terms of the contract. The contract also specified that any delays in performance pursuant to the time deadlines would result in substantial damages suffered by DMCI at the responsibility of FRONTIER due to its nonperformance.

10. FRONTIER is approximately six (6) months late in its performance of its submittals pursuant to the contract, in direct breach of the contract.

11. On or about 6-18-08, FRONTIER announced its position was to stop work on the project altogether, which has resulted in and will result in further damages to DMCI.

12. FRONTIER has not performed pursuant to the contract deadlines and has caused significant delays on the Project.

13. As a result of FRONTIER's noncompliance, DMCI has suffered liquidated damages at $1,000 per day for approximately 150 days, anticipated additional liquidated damages at a cost to DMCI at $1,000 per day; extended performance costs at the rate of $600 per day charged directly to DMCI by the project owner; and anticipated additional liquidated damages at a cost to DMCI of $600 per day with possible extended performance costs and other impact costs; as well as extended costs to DMCI to mitigate its damages by contracting with others to perform FRONTIER's duties on the Project at an estimated cost fo $70,000.

---

[2]Exhibit A is not attached to the FAC. However, a copy of the contract at issue is attached to the original Complaint as Exhibit A.

1

        **14.  In addition to the foregoing, DMCI has suffered, or will suffer, damages by penalties from the Project's owner for extended performance costs and other impact costs by other subcontractors of DMCI; costs for excessive administrative and support activities for failed performance pursuant to the prime contract on the Project; and for recovery of payments previously made to FRONTIER to date.**

The FAC also alleges that, at the time Davis entered into the contract with Frontier, Davis was unaware that Frontier did not possess a valid California Contractor's License and that Frontier Steel submitted a bid on a California Public Works construction project where it offered to construct and erect the subject steel building thereby requiring it to be duly licensed by the California Contractor's License Board."  The FAC alleges that Davis is entitled to recover all compensation paid to Frontier on the project pursuant to California Business & Professions Code § 7031(b):

        **Except as provided in subdivision (e), a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract.**

Davis also seeks to recover the compensation paid to Frontier pursuant to California Business & Professions Code § 17203 and the equitable power of the Court and seeks exemplary and punitive damages for Frontier's alleged fraud in failing to disclose that Frontier did not possess a valid California Contractor's License.

        2.  <u>Factual Background</u>.

4

On October 8, 2007, Davis obtained a bid from Frontier, addressed to "contractors/estimators," for "pre-engineered bldg." The bid is for $145,494 and further states: "Erecting: We can assist you in erecting this structure for this price $ 70, 750.00." (Stephen Davis Decl., Ex. A.). Stephen Davis, president of Davis, avers that submission of the bid to "contractors/estimators" typically means that the proposal went to all of the generals that were bidding the job." (*Id.*, ¶ 4). Davis was the low bidder and was awarded the job by the School District and listed Frontier as one of the subcontractors (*Id.,* ¶ 5). By letter dated December 7, 2007, Davis notified Frontier of its intent "to issue a subcontract to Frontier ... in the amount of $145,494.00 for Pre-Engineered Metal Building in accordance with the Plans and Specifications by BFGC Architects Planners Inc., and Addendums No. 1 thru 5." (*Id.,* Ex. B). Mr. Davis avers:

> 7. Thereafter, on December 13, 2007, Davis Moreno sent to Frontier ... a Purchase Order for the steel dated December 11, 2007, attached as Exhibit C. On January 10, 2008, Davis Moreno received a modified Purchase Order by fax transmission from Frontier ... This document is attached as Exhibit D. On the same day, I signed a Purchase Order, subject to the conditions set forth in my letter I wrote to Miranda Bresnick at Frontier ... outlining what Davis Moreno was agreeable relative to the Purchase Order. A true and correct copy of the letter and signed Purchase Order are attached as Exhibit E.

Exhibit C to Mr. Davis' declaration, the initial Davis Purchase Order contains no forum selection or choice of law provision.

The initial Davis Purchase Order states:

> Furnish:
>
> Complete per plans, specifications, <u>Specification Section 13122 Metal Building Systems</u> including any and all addendums as prepared by BFGC Architects Planners Inc. and as called for Kern HSD Records Retention Facility Project

for a total amount of $145,494.00. The initial Davis Purchase Order does not specify that Frontier would also erect the building.

Exhibit D to Mr. Davis' declaration, the Frontier Purchase Order, faxed to Davis by Frontier in response to Davis' December 13, 2007 Purchase Order, contains the following provision:

> This PURCHASE ORDER shall be construed and enforced under the laws of the state of Colorado ... Purchaser consents to the exclusive jurisdiction of the district court in and for the county of Douglas, State of Colorado. No actions may be commenced other than in the district court, County of Douglas, State of Colorado.

The Frontier Purchase Order also stated:

> Supply as follows:
>
> ...
>
> 1.0 Primary and Secondary Steel
>
> 2.0 Standing Seam Rod Panels 24" Coverage 24 GA
>
> 3.0 Metal Panels at the Roof Mechanical Screen
>
> 4.0 Steel Framing for Mechanical Screen
>
> 5.0 Mansard Rigid Frames
>
> 6.0 Metal Deck on Mansard Frames

6

7.0 Soffit Structure at Overhangs

         8.0 6" Metal Stud and Parapet Framing

         9.0 Internal Gutters

         10.0 Gutters and Downs

         11.0 Full Trim Package

for an amount due of $145,494.00.  There is no mention in the

Frontier Purchase Order that Frontier would also erect the

building.  The Frontier Purchase Order states:

         It is the building's purchaser's
         responsibility to obtain experienced
         personnel, proper tools and equipment to
         erect this building in a safe competent and
         professional manner.

     Exhibit E to Mr. Davis' declaration is the January 10, 2008

letter from Davis to Frontier concerning the "final purchase

order" for the Project, and stating that "[t]hese following

clarifications, based on our discussion, shall also be made part

of the terms of the final purchase order."  The January 10, 2008

letter states in pertinent part that Davis will sign the Purchase

Order provided by Frontier, instead of the Purchase Order

provided by Davis, "with the following provisions" that

"paragraph 6 will be changed to assert that the prevailing

jurisdiction for any legal action filed will be determined by the

complaining party."  The January 10, 2008 letter concluded:

         Your quote also asserted that you would
         provide a building erector for the sum of
         $70,750.00.  After receiving quotes from the
         recommended erectors, we are now faced with
         quotes that exceed your originally quoted
         amount by over 10%.  As discussed during our
         conversation, DMCI though disappointed that

7

> your original quote is now being exceeded,
> would absorb this cost increase.  This again
> is being done in the spirit of cooperation.
> We expect that Frontier Steel will accept our
> final revisions to the purchase order, and
> proceed with the timely submission of shop
> drawings as required and promised.  We also
> request that Frontier Steel take all steps to
> incur timely fabrication and delivery of the
> product as we discussed.

Mr. Davis avers that, "[a]fter Frontier received my letter of January 10, 2008, they proceeded to perform under the agreement, which included the agreement as to how jurisdiction would be established."

By declaration filed on August 28, 2008, Miranda Bresnick, president of Frontier, avers in pertinent part:

> 3.  Frontier's principal place of business is
> and was at the time of commencement fo this
> action located at 8250 E. Park Meadows Drive,
> Suite 100, Lone Tree, Colorado.  It is
> Frontier's only office.
>
> ...
>
> 5.  Frontier served Davis Moreno with a
> Summons and Complaint in the case of <u>Frontier
> Steel Buildings Corp. v. Davis Moreno
> Constructions, Inc.</u>, Case No. 2008 CV 1506 in
> the District Court for the County of Douglas,
> State of Colorado on August 18, 2008.
>
> 6.  Davis ... had been doing business with
> Frontier ... since January of 2008 on the ...
> Project ... Frontier ... is the designer,
> engineer, and manufacturer of the pre-
> engineered steel building for the Project
> (but not to erect it).  This contract is the
> subject matter of both legal actions.
>
> 7.  The contract order between Frontier and
> Davis Moreno is deemed to be executed in
> Colorado.  These terms were accepted by Davis
> Moreno.  All initial negotiations prior to
> January 10, 2008, took place by telephone or

8

fax or email while Frontier was in Colorado. The letter of January 10, 2008, part of the contract, specifically provides that ' ... jurisdiction for any action filed will be determined by the complaining party ...' ....

...

10.  The evidence regarding the design, engineering and fabrication of the steel building are all located and documented in Colorado.  All employees and engineers familiar with the Project and the deliveries of steel are located in Colorado.  To transport all design, engineering and fabrication documentation and witnesses to Fresno, California, would be extraordinarily expensive, oppressive and unfair.  It would require Frontier to shut down its operations for a substantial portion of the trial due to the absence of key employees needed at trial outside of Colorado.

11.  <u>Colorado Performance of Contract</u>. Frontier ... performed its design and engineering contract duties with Davis Moreno through its offices, its engineers and its employees located in ... Colorado. Frontier's professional engineers licensed to perform services in the State of California are located in Colorado.

...

14.  Frontier is not a large corporation with substantial reserves.  It cannot afford to allow its customer buyers to take delivery of steel entirely on credit, or to withhold payment upon delivery and then require Frontier to collect in another state. Accordingly, Frontier requires in its contracts the provision that the contract is deemed executed in Colorado and a Colorado choice of law clause and a choice of forum clause as well.

15.  When appropriate, we commence legal actions in Colorado.

16.  Frontier has not agreed by contract or otherwise to litigate in California because

Frontier was the first to both file and serve its complaint, in this case in Colorado.

17.  Frontier does not own other business under any other name or own subsidiaries.

18.  Frontier has no continuous or systematic contact with California.

19.  Frontier has no office or other presence in California.  Frontier does not have and has not had employees, agents, mailing addresses, or telephone or fax lines, or bank accounts in California.

20.  Frontier did not directly seek business in California.

21.  Frontier did not and does not own property in California nor has it been subject to taxation in California.

22.  Frontier has no prior history with Davis Moreno.

23.  I am the wife of Allen Bresnick ....

24.  My husband suffered from two cancerous tumors which required surgery to save a leg. They removed the tumors and the prognosis was that the operation had been successful.

25.  After a period of remission, symptoms suddenly reappeared ....

27.  Dr. Yougates, a cancer surgeon, heard of the case and chose to help us.  Our choice was a complete amputation of not only the leg but the left half of the hip as well ....

28.  My husband no longer has a left leg or left hip bone.  He is bed ridden, unable to move with only half a hip, and requires regular assistance for all significant functions and movements.  I am his care giver and do not leave him alone for more than five hours at a time which fortunately does allow me to work.

...

30.  My son is 13 years of age.  I am
effectively a single mom.  I have no family
in the area to assist with his oversight and
care.  He is a young teenager needing
supervision.  He also requires
transportation.  No one else in the household
is able to provide it.

31.  Leaving Denver to participate in a trial
in Fresno, California, would be an EXTREME,
EVEN RISKY, HARDSHIP for my family as well as
myself.  The anxiety of being away from home
under such circumstances is difficult to
contemplate.

Judicial notice is taken of rulings in *Frontier Steel Buildings Corp. v. Davis Moreno Constructions, Inc.*, Case No. 2008 CV 1506 in the District Court for the County of Douglas, State of Colorado.  On September 25, 2008, Davis moved to dismiss the state action based on the forum selection clause in the contract.  The Colorado Court granted the motion on November 13, 2008, ruling:

The Defendant argues that the Motion to
Dismiss should be granted because the parties
agreed that the forum for any litigation
would be chosen by the complaining party.
The argument of the Defendant is well taken
and capably stated in their motion.  The
Court finds that the parties have a valid and
enforceable forum-selection clause that
governs this matter and that California is
the chosen forum.  Furthermore, the failure
to respond to a motion may be considered by
the Court to be a confession of the motion.
See C.R.C.P. 121 Section 1-15(3).  For the
reasons stated in the Defendant's brief and
also based on the Plaintiff's failure to
respond, the Defendant's Motion to Dismiss is
GRANTED and this case is DISMISSED.

Frontier filed a motion for reconsideration of dismissal of the action.  Frontier's motion for reconsideration was denied by

11

Order dated January 22, 2009:

The Court finds that the forum selection clause at issue in this case is contained in the agreement between the parties and reads as follows: ... 'the prevailing jurisdiction for any legal action filed will be determined by the complaining party. ... It is undisputed that the Defendant (DMCI) filed suit against the Plaintiff (Frontier) in California in the U.S. District Court for the Eastern District of California on June 18, 2008. DMCI did not achieve service on Frontier until August 18, 2008 and there currently is a motion to quash that service in the California case.

The present case in Colorado was filed on June 30, 2008. Plaintiff Frontier achieved service on Defendant DMCI on August 15, 2008. Frontier argues that the forum selection clause means that the forum is determined by the party who first files and serves a complaint. Frontier argues that, while the complaint in this case was filed after the complaint in the California case, service was accomplished first in the Colorado case and therefore the appropriate forum for litigation between the parties is Colorado. The Court disagrees.

C.R.C.P. 3 holds that a civil action ' ... is commenced (1) by filing a complaint with the court or (2) by service of a summons and complaint.' Section 13-80-102 requires that a civil action shall be commenced within a set time period after a cause of action occurs. Pursuant to C.R.C.P. 3 commencement of a civil action occurs when a complaint is filed. The Federal Rules of Civil Procedure at FRCP 3 declares that a civil action is commenced by filing a complaint with the court. Thus, the commencement of legal action between the parties first occurred in California when the complaint was filed there on June 18, 2008. The complaint in Colorado was filed on June 30, 2008. The forum selection clause requires that the prevailing jurisdiction shall be determined by the complaining party. The forum selection clause does not require that the forum be

determined by the party who files _and_ serves a complaint.  Instead the forum is determined by the complaining party, which the Court determines to be the Defendant DMCI, who first filed a complaint in California.  The dispute between these parties should therefore be resolved in California, the place where the complaint was first filed.

Russell D. Cook, counsel for Davis, filed a supplemental declaration on February 17, 2009 (Doc. 26).[3]  Mr. Cook avers:

2.  At issue in this matter, among other things, is the delays associated with the acts and omissions of Frontier ... in connection with its contractual performance and refusal to perform.  The damages sought by Davis Moreno include and pertain to the following: additional costs to purchase steel, additional costs to erect steel, additional design costs, extended performance costs, liquidated damages for delay and related items.

3.  The following witnesses may be called to establish an impact to the timely prosecution of the project, i.e. delay.  Frontier Steel's responsibility for delay, as well as the damages to Davis Moreno resulting therefrom.  On these issues, Davis Moreno anticipates testimony regarding the same from the following witnesses will be necessary:

Employees of Davis Moreno (all residents of Eastern District)

a.  Steven Abston, Operations

b.  Stephen Davis, President

c.  Dianne Davis, Project Engineer

d.  Lance Vincent, Project Manager

---

[3]Mr. Cook's supplemental declaration was filed after the February 2, 2009 hearing.  Frontier objected to the supplemental declaration.  However, because Frontier's initial motions were denied because of the filing of the FAC, Frontier's objection is now moot.

13

1          **e.  Jack Blankenship, Superintendent**

2          **f.  Eddie Pacheco, Superintendent**

3          **g.  Approximately 10 individuals who erected the structure believed to reside in or around Bakersfield, CA.**

4

5          **Non-Party Employees**

6          **h.  Ron Unruh, Project Manager Kern Unified School District, Bakersfield, CA**

7

8          **i.  Jack Colvard, Director of Facilities Planning, Kern Unified School District, Bakersfield, CA**

9

10         **j.  Robert Trost, Project Architect, BFGC Architects & Planners, Inc., ... Bakersfield, CA**

11

12         **k.  John Forestelle, Structural Engineer (consultant BFGC), ... Bakersfield, CA**

13         **l.  Employees of MBCI (Atwater, CA) performed additional fabrication in connection with the subject steel building.**

14

15     By supplemental declaration filed on February 27, 2009, Ms.

16 Bresnick avers:

17         **2.  Davis Moreno would have Frontier dragged into California wrongfully based upon Davis Moreno's on-site claims, not Frontier's contract or scope of work which was entirely in Colorado.**

18

19

20         **3.  At issue in this matter is the scope of Frontier's contract with Davis Moreno. Frontier is a design and engineering company. Frontier's entire role under the contract with Davis Moreno was performed in Colorado. Frontier did not contract, directly or indirectly, with the Kern Unified School District, but with Davis Moreno. Frontier did not contract to erect the building. It had no on site involvement with the Project. Frontier procured steel based upon plans approved by Davis Moreno and public officials overseeing the building.**

21

22

23

24

25

26

Davis Moreno did not reject delivery of steel or give notice of any default for wrongly delivered steel pursuant to the contract or under the UCC. Frontier did not control the design approval process or the submission of specifications by subcontractors. Frontier had no control over timing or alleged delays.

Yet, Davis Moreno argues that this lawsuit is based upon everything that happened after Frontier's accepted delivery of steel.

Frontier's obligations were performed in Colorado. They were design and engineering services together with procurement of, but not erection of, approved steel for the subject Project.

4. Frontier's witnesses necessarily are entirely outside the State of California. Frontier's evidence rests upon the work and the timing of the work performed by these witnesses, and the documentation of every action taken. They are directly involved in the performance of Frontier's design, engineering, procurement and delivery contract functions.

5. The following persons will be necessary to be called to establish the terms of the contract, the scope of the specifications, the designs and engineering calculations prepared according to specifications, the changes requested by Davis Moreno, the changes required by subcontractors such as HVAC, plumbing, and others, the dates of submissions, and the dates of approvals, and the process and timing of ordering and delivering approved steel, and the documentation and supporting communications establishing all of the foregoing facts. All are residents outside the State of California and will be necessary:

Employees of Frontier Steel Building Corp. (all Denver)

Miranda Bresnick, President

Terry Burke, Director Project Engineering

Sunita Shrestha, design engineer

Ramankanta Adhikary, CA Licensed Engineer

Frontier has previously stated that the diversion of these employees to California for trial will substantially impair the daily operations of Frontier. Frontier's exhibits which establish Frontier's defenses against alleged delays are located in Colorado.

Non-Party Witnesses

Larry Hall, MBCI, roofing systems, Denver, Colorado.

B. <u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>.

1. <u>Governing Standards</u>.

Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir.2002). If the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Id*. In such cases, the court "only inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir.1995). Although the plaintiff cannot "'simply rest on the bare allegations of its complaint,' ..., uncontroverted allegations in the complaint must be taken as true." *Dole Foods Co., Inc.*, *id*. "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id*.

16

Personal jurisdiction exists if permitted by California's long-arm statute and federal due process.  Pursuant to Cal. Code of Civ. P. § 410.10, California's long-arm statute reaches as far as the Due Process Clause permits.  *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998).  For a court to exercise personal jurisdiction over a non-resident defendant, that defendant must have at least "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Two categories of jurisdiction exist: general or specific jurisdiction. *See Lake v. Lake*, 817 F.2d 1416, 1420-21 (9th Cir. 1987).

At the February 2, 2009 hearing, Davis conceded that general jurisdiction does not exist.  In its written opposition to the second motion to dismiss Davis did not argue that general jurisdiction over Frontier existed.  At the May 4, 2009 hearing on the second motion to dismiss, Davis referred to Frontier's November 12, 2008 registration with the California Secretary of State of an agent for service of process.  (Doc. 27).  Davis argued that Frontier's registration constitutes Frontier's consent to general personal jurisdiction in California.  Davis's contention is without merit.  The California courts hold that designation of an agent for service of process and qualification to do business in California alone are insufficient to permit general jurisdiction.  *DVI, Inc. v. Superior Court*, 104

Cal.App.4th 1080, 1095 (2002); *Gray Line Tours v. Reynolds Electrical & Engineering Co.*, 193 Cal.App.3d 190, 194 (1987).

The issue before the Court is specific jurisdiction.

A court may exercise specific jurisdiction when the following requirements are met:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; *or* perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one that arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.,* it must be reasonable.

*Dole Foods, supra*, 303 F.3d at 1104. The plaintiff bears the burden of satisfying the first two prongs of this test. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990). If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-478 (1985). Courts examine the defendant's contacts with the forum at the time of the events underlying the dispute. *See Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987).

"The purposeful availment standard requires more than foreseeability of causing injury in another state." *Terracom v.*

*Valley Nat. Bank*, 49 F.3d 555, 560 (9ᵗʰ Cir.1995) (citing *Burger King Corp.*, *supra,* 471 U.S. at 474).  "[T]he foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980).  "The purposeful availment prong prevents defendants from being haled into a jurisdiction through 'random,' 'fortuitous,' or 'attenuated' contacts." *Terracom, id.* (citing *Burger King Corp., supra*, 471 U.S. at 475).  As explained in *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802-803 (2004):

> We often use the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction ..., but availment and direction are, in fact, two distinct concepts.  A purposeful availment analysis is most often used in suits sounding in contract ... A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort. ....

> A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there.  By taking such actions, a defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' ... In return for these 'benefits and protections,' a defendant must - as a quid pro quo - 'submit to the burdens of litigation in that forum.' ....

> A showing that a defendant purposefully directed his conduct toward a forum state, by contrast, usually consists of evidence of the defendant's actions outside the forum state

that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere ... The Supreme Court has held that due process permits the exercise of personal jurisdiction over a defendant who 'purposefully direct[s]' his activities at residents of a forum, even in the 'absence of physical contacts' with the forum.

"The second prong of the specific jurisdiction test (litigation must "arise out of or relate to those activities") is met if, "but for" the contacts between the defendant and the forum state, the cause of action would not have arisen." *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995) citing *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385-386 (9th Cir.1990) (citations omitted), *rev'd on other grounds*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

The third prong of the test, reasonableness, is presumed once the court finds purposeful direction: "[w]e presume that an otherwise valid exercise of specific jurisdiction is reasonable." *Ballard v. Savage*, 65 F.3d 1495, 1500 (1995) citing *Sher v. Johnson*, 911 F.2d 1357, 1364 (9th Cir.1990)(once court finds purposeful availment, it must presume that jurisdiction would be reasonable). The burden of proving unreasonableness shifts to defendant. *Ballard*, 65 F.3d at 1500.

Ninth Circuit law formerly required a plaintiff to demonstrate each of the three factors to establish specific jurisdiction (*see Data Disc, Inc. v. Sys. Tech. Assoc.*, 557 F.2d 1280, 1287 (9th Cir.1977)). A more flexible approach, however, has since been adopted. *Ochoa v. J.B. Martin and Sons Farms,*

*Inc.*, 287 F.3d 1182, 1188 (9th Cir.2002), citing *Brand v. Menlove Dodge*, 796 F.2d 1070, 1074 (9th Cir.1986). "Jurisdiction may be established with a lesser showing of minimum contacts 'if considerations of reasonableness dictate.'" Ochoa, 287 F.3d at 1189 (citing *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir.1986); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). "Activity by the defendant need not physically take place in the forum state so as to constitute sufficient contact under the due process test ... The Supreme Court has consistently rejected the notion that absence of physical contacts with a forum state can defeat personal jurisdiction, '[s]o long as a commercial actor's efforts are purposefully directed toward residents of another State.'" *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1398 (9th Cir.1986) citing *Burger King*, 471 U.S. at 475-477; *see also Calder v. Jones*, 465 U.S. at 790. On the other hand, "both [the Ninth Circuit Court of Appeals] and the courts of California have concluded that ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state." *Peterson v. Kennedy*, 771 F.2d 1244, 1272 (9th Cir.1985) (finding defendant's two foreign-mailed cease and desist letters, dealing with plaintiff's potential patent infringement actions, insufficient to create personal jurisdiction in the forum state) (citing *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247,

1254 (9th Cir.1980); *see also Floyd J. Harkness Co. v. Amezcua*, 60 Cal.App.3d 687, 692-93, (1976); *Interdyne Co. v. SYS Computer Corp.*, 31 Cal.App.3d 508, 511-12 (1973)).

"In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones*, *supra,* 465 U.S. at 788-89. "The plaintiff's lack of 'contacts' will not defeat otherwise proper jurisdiction." *Calder v. Jones*, *id.*

"Questions of personal jurisdiction admit of no simple solutions and that ultimately due process issues of reasonableness and fairness must be decided on a case-by-case basis." *Forsythe v. Overmyer*, 576 F.2d 779, 783 (9th Cir.1978) citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952).

As to the first prong, purposeful availment, Frontier argues that none of the work it performed occurred in California and that all of its activities took place in Colorado. The only connection to California is that Frontier procured steel and delivered it to the jobsite in California. Frontier asserts that it did not contract to erect the steel building in California; rather, it contracted to design, engineer, fabricate and procure materials for the building.

Davis disagrees that Frontier did not contract to erect the building in California, contending that Frontier agreed to erect the building or find an erector.

The evidence does not establish that Frontier and Davis

agreed that Frontier would erect the building.

   In submitting its bid, Frontier offered: "Erecting: We can assist you in erecting this structure for this price $ 70, 750.00." The initial Davis Purchase Order makes no mention of the erection of the building by Frontier. When Frontier responded to the Davis Purchase Order with its Purchase Order, again there was no mention of erecting the building and the Frontier Purchase Order specifically stated:

>    It is the building's purchaser's
>    responsibility to obtain experienced
>    personnel, proper tools and equipment to
>    erect this building in a safe competent and
>    professional manner.

In the January 10, 2008 letter from Davis to Frontier, Davis stated:

>    Your quote also asserted that you would
>    provide a building erector for the sum of
>    $70,750.00. After receiving quotes from the
>    recommended erectors, we are now faced with
>    quotes that exceed your originally quoted
>    amount by over 10%. As discussed during our
>    conversation, DMCI though disappointed that
>    your original quote is now being exceeded,
>    would absorb this cost increase. This again
>    is being done in the spirit of cooperation.
>    We expect that Frontier Steel will accept our
>    final revisions to the purchase order, and
>    proceed with the timely submission of shop
>    drawings as required and promised. We also
>    request that Frontier Steel take all steps to
>    incur timely fabrication and delivery of the
>    product as we discussed.

This paragraph in Davis's June 10, 2008 letter suggests that Frontier's offer to assist in the erection of the building was not accepted by Davis.

   Davis further argues that Frontier purposefully availed

itself of the privilege of conducting business in California by voluntarily entering into a contract to provide steel and services for the construction of a building as part of a California public works project.  Davis contends that Frontier exchanged correspondence with Davis and negotiated and entered into a contract with Davis.  The contract required Frontier to submit engineering and fabrication drawings in a timely manner to ensure the design would comply with project specifications, which Davis argues created continuing obligations between it and Frontier.  Davis refers to the payment schedule for the final Purchase Order, which sets forth four payments based on completion of delineated tasks.  In addition, Davis points out that, under California law, Frontier would have been entitled to the protections like stop notice and bond claim rights as a subcontractor on a California public works project.[4]  Davis refers to the fact that Frontier's bid was submitted to "contractors/estimators," which Mr. Davis averred in the industry means Frontier's bid went to all general contractors also bidding on the Project in California.

Frontier argues that the "mere delivery of product to the State by itself, is not sufficient contacts to establish that Frontier has availed itself of the privileges of the State of California."  Frontier cites *Anderson v. Shiflet*, 435 F.2d 1036 (10th Cir.1971) and *Lakeside Bridge & Steel Co. v. Mountain State*

_____

[4]**Davis conceded at the February 2, 2009 hearing that it had no evidence that Frontier ever availed itself of these protections.**

24

*Constr. Co.*, 597 F.2d 596 (7th Cir.1979), *cert. denied*, 445 U.S. 907 (1980).

In *Anderson*, the Tenth Circuit ruled that where a Texas resident hired an Oklahoma architect who drew plans in Oklahoma for projects located in Texas and the Texas resident had not been in Oklahoma relative to the work, the Oklahoma long-arm statute did not permit suit in Oklahoma by the architect against the Texas resident to recover fees.

In *Lakeside,* Lakeside, a Wisconsin corporation, entered into a contract with Mountain State, a West Virginia corporation. Mountain State had no place of business, property, bank deposits, telephone or telephone listings in Wisconsin, had never sent an officer or agent to Wisconsin, or had any contact with Wisconsin other than the events leading to the contract. The contacts between the parties all occurred outside Wisconsin or by interstate mail or telephone. The contract called for Lakeside to furnish structural assemblies to Mountain State for use in constructing the outlet works for a dam in Virginia. While Mountain State was preparing to bid on the dam project, it was visited in its offices in West Virginia by Lakeside's agents, who solicited the subcontract for the structural assemblies and left a proposal. After Mountain State was awarded the contract for the construction of the outlet works, it accepted Lakeside's proposal by preparing and mailing a purchase order to Lakeside in Wisconsin. Lakeside made a change in the purchase order and returned it to Mountain State, which did not approve the change

formally but did so by treating the modified purchase order as effective.  Between the initial visit by Lakeside's agents and the return of the purchase order, and presumably afterward, there were telephone conversations between Lakeside in Wisconsin and Mountain State in West Virginia, some placed by Mountain State, and there was correspondence between the parties, some mailed by Mountain State.  The Lakeside proposal, incorporated into the purchase order, provided that the goods were to be supplied by Lakeside "F.O.B. SELLERS PLANT MILWAUKEE, WISCONSIN."  Nothing was said otherwise where the goods were to be manufactured.  Lakeside proceeded to manufacture the goods at its plant in Wisconsin and ship them to a siding near the project site in Virginia, where they were received by Mountain State and incorporated into the construction project.  Subsequently Mountain State, asserting that the goods were defective in certain respects, withheld payment of a part of the purchase price.  Lakeside then filed suit in Wisconsin, alleging that the court had personal jurisdiction over Mountain State under the Wisconsin long-arm statute.  The district court denied Mountain State's motion to dismiss for lack of personal jurisdiction.  597 F.2d at 597-598.  The Seventh Circuit reversed:

> Viewed realistically, the contacts with Wisconsin in this case consist solely of '(t)he unilateral activity of (one) who claim(s) some relationship with a nonresident defendant,' and this 'cannot satisfy the requirement of contact with the forum State.' *Hanson v. Deckla*, *supra*, 357 U.S. at 253 ... Although Mountain State in a sense caused the activity in Wisconsin by placing the order,

the contract between the parties left
Lakeside in absolute control over where it
would conduct that activity, and it made this
decision and conducted the activity
unilaterally.  Mountain State's belief, which
we may assume existed, that Lakeside would
choose to perform its contractual obligations
in Wisconsin does not constitute an
invocation of the benefits and protections of
Wisconsin's laws; Mountain State did not
'purposefully avail itself of the privilege
of conducting activities within the forum
State, thus invoking the benefits and
protections of its law.' *Id.* ... Therefore
the courts of Wisconsin no more had
jurisdiction over Mountain State than would
the courts of England or Taiwan if Lakeside
had chosen to have the goods manufactured in
either of those places.

In reaching this conclusion we have not
overlooked the other facts to which Lakeside
refers in attempting to strengthen its
argument in support of the district court's
exercise of jurisdiction.  That the contract
specified 'F.O.B. Sellers Plant Milwaukee,
Wisconsin' does not establish that the
contract required Lakeside to perform its
contractual obligations at its Wisconsin
plant and does not itself create a contact
sufficient to justify the challenged
assertion of jurisdiction, especially when
considered with the words immediately
following, 'with freight allowed to rail
siding nearest project site.'  The fact that
Wisconsin's courts would be available to
Mountain State in a suit on the contract does
not constitute a meaningful relationship
between that company and that state.  If
Lakeside had conducted no activities related
to the contract in Wisconsin, the courts of
that state would nonetheless have had
jurisdiction over a suit against Lakeside by
Mountain State, as would the courts of any
other state in which Lakeside was doing
business ... Use of the interstate telephone
and mail service to communicate with a
Wisconsin plaintiff, if constituting contacts
supporting jurisdiction, would give
jurisdiction to any state into which
communications were directed.  The sending of

27

> the purchase order to Wisconsin does not significantly aid jurisdiction, especially when it was modified by Lakeside and eventually accepted as modified in West Virginia through Mountain State's acquiescence. In any event, formalities of contract execution are not determinative for purposes of jurisdiction ... Finally, the dollar amount of the transaction can hardly be a principled basis for distinguishing between one case and another, let alone for ignoring the requirement, stated in *Hanson* and reiterated in *Shaffer*, that the defendant, not the plaintiff, conduct activities in the forum state.

527 F.2d at 603-604. *See also SGI Air Holdings II LLC. v. Novartis Intern., AG*, 192 F.Supp.2d 1195 (D.Colo.2002)(Party does not submit itself to personal jurisdiction in distant forum simply by entering into contract with party residing in that forum; prospective buyer of aircraft was not subject to specific jurisdiction in Colorado in seller's breach of contract suit, even though buyer had contacted seller's Colorado agent to inquire about aircraft and faxed signed contract back to seller's agent in Colorado, where buyer did not initiate any activity peculiar to Colorado, did not visit Colorado in connection with the transaction, did not personally conduct other business in Colorado, and did not own property on its own behalf in Colorado.)

Relying on these cases, Frontier argues that it delivered contracted goods approved by Davis to California for installation by Davis, not by Frontier. All of Frontier's actions in California during the course of the contract are acts derivative of Davis's general contractor actions, not purposeful actions by

28

Frontier to avail itself of the privileges of California.

Davis has established purposeful availment by Frontier because, although Frontier's bid was in response to Davis's solicitation of subcontractor bids for the Project, Frontier knowingly and intentionally shipped its product to California for inclusion in the Project. By shipping its product to California for inclusion in the Project, Davis obtained the protections of the laws of California pertaining to the rights of subcontractors.

As to the second prong of the specific jurisdiction test, the contract dispute at issue relates to the contacts between Frontier and Davis. The contacts between Davis and Frontier concerned goods and services Frontier was contractually obligated to deliver to Davis in California. But for these contacts, this litigation would not have arisen.

As to third prong of the test, reasonableness, because purposeful availment exists, the burden of proving unreasonableness shifts to the defendant.

Seven factors are considered in weighing reasonableness: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective

relief; and (6) the existence of an alternative forum.  *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1132 (9th Cir.2003).  No one of the factors is dispositive in itself; courts are required to balance all seven.  *Id.*

With respect to these factors, the extent of Frontier's purposeful interjection into California's affairs is minimal.  Frontier entered into a single subcontract with a California general contractor to engineer and fabricate a steel building and ship it to California.  Ms. Bresnick's unchallenged declaration establishes that the burden on Frontier to defend this action in California will be substantial.  The extent of conflict with the sovereignty of Colorado weighs in favor of Davis.  The Colorado Court dismissed Frontier's action against Davis based on the forum selection provision in the final Purchase Order.  California has an interest in adjudicating this dispute.  The contract pertained to the construction of a building in California by a California general contractor on behalf of a California public school district.  In addition, there are allegations that Frontier was not a contractor licensed to do business in California.[5]  The most efficient judicial resolution

---

[5]Frontier complains that Davis has not provided evidence that Frontier was not licensed in California or that Frontier was required to be licensed in California in order to be a subcontractor on the project.  However, other than the reference in Ms. Bresnick's February 27, 2009 declaration listing "Ramankanta Adhikary, CA Licensed Engineer" as a party witness, Frontier does not present evidence that it was in fact licensed and presents no legal authority that Frontier was not required to be licensed.

of the dispute appears to be in California.  Notwithstanding the substantial burden on Frontier, the larger number of witnesses and evidence is located in California, although Frontier complains that the Kern County Unified School District witnesses are not necessary because the contract was not with the school district.  Nonetheless, the school district witnesses appear to be relevant to the issues of the fitness of the steel and damages.  The importance of the California forum to Davis' interest in convenient and effective relief weighs in favor of Davis for the same reasons.  An alternative forum appears to exist. The Colorado state court has dismissed Frontier's action against Davis based on the forum selection provision in the final Purchase Order.  However, as discussed *infra*, the United States District for the District of Colorado is an appropriate forum because venue could be transferred to that forum.

Frontier's second motion to dismiss for lack of personal jurisdiction is DENIED.

C.  **MOTION TO DISMISS OR TRANSFER ON THE BASIS OF IMPROPER VENUE**.

Frontier moves to dismiss, or in the alternative, to transfer, this action on the ground of improper venue.  Frontier asserts that under the forum selection clause in the contract, which allowed for jurisdiction to be determined by the commencement of an action by one of the parties, the proper place of jurisdiction is Colorado because Frontier filed suit against Davis first in Colorado and properly served process first.

Rule 12(b)(3), Federal Rules of Civil Procedure, allows a motion to dismiss on the ground of improper venue.

28 U.S.C. § 1391 provides:

> (a) a civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.
>
> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

28 U.S.C. § 1406(a) provides that "[t]he district courts of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

A court ruling on a Rule 12(b)(3) motion to dismiss for improper venue based on a forum selection clause must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party. *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1138 (9th

32

Cir.2004).[6]

In determining whether venue is proper under § 1391(a)(2), only events and omissions that directly give rise to the claim are relevant, i.e., those acts or omissions that have a close nexus to the wrong. Schwarzer, Tashima & Wagstaffe, ¶ 4:118.5, CAL.PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2004). Section 1391(a)(2) does not require that a majority of the events or omissions occur in the district in which suit is filed, nor that the events there predominate. It is sufficient that a substantial part occur there. Therefore, a plaintiff may choose either of several districts having relatively equal connections with the dispute. *Id.*, ¶ 4.119. What constitutes a substantial part is to be determined in light of the purpose of the venue statute, i.e., by assessment of the ramifications of the operative events for efficient conduct of the suit. *Id.*, ¶ 4:123.

Venue is proper in the Eastern District of California because it is the judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." The construction project for which goods and services from Frontier were contracted is located in Kern County.

_____

[6]Because resolution of such a motion may be difficult when genuine factual issues are raised, the district courts have discretion to hold the Rule 12(b)(3) motion in abeyance pending an evidentiary hearing or to deny the motion while granting leave to refile it if further development of the record eliminates any genuine factual issue. *Murphy, id.*, at 1139-1140.

It is undisputed that Frontier's fabricated steel was delivered by Frontier to the building site in Kern County, designed to be incorporated into the Kern school building.  In the declaration of Frontier's president, Ms. Bresnick avers: "All steel has been delivered and accepted.  However, Davis Moreno demands more steel and has not fully paid for delivery of steel."  Although Frontier characterizes this dispute as one over a demand by Davis to provide more steel beyond the scope of the contract, the goods in dispute are located in Kern County.

Frontier's motion to dismiss or transfer on the ground of improper venue is DENIED.

D.  <u>MOTION TO TRANSFER BASED ON *FORUM NON CONVENIENS*</u>.

Frontier moves to transfer this action to the United States District Court for the District of Colorado pursuant to the doctrine of *forum non conveniens*.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The Court is given broad discretion to transfer a case to another district where venue is also proper.  *Sparling v. Hoffman*, 964 F.2d 635, 639 (9th Cir.1988).  The goal behind Section 1404(a) "is to prevent waste of time, energy, and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  The defendant has the burden of making a "strong showing of inconvenience to

34

warrant upsetting the plaintiff's choice of forum." *Decker Coal v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986).

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). "Three factors are in the inherently broad discretion of the Court, allowing the Court to consider the particular facts of each case: convenience of the *parties*, convenience of the *witnesses*, and *interest of justice*." *E. & J. Gallo Winery v. F. & P. S.P.A.,* 899 F.Supp. 465, 466 (E.D.Cal.1994). These factors break down to a number of relevant considerations: convenience of witnesses, judicial economy, relative ease of access to proof, and availability of compulsory process. *Id.* The Court may consider: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. *Jones v. GMC Franchising, Inc.*, 211 F.3d 495, 498-499 (9th Cir.), *cert. denied*, 531 U.S. 928 (2000). The presence of a forum selection clause is a significant factor in the Court's Section 1404(a) analysis as is the relevant public

35

policy of the forum state, if any.  *Id.*  Unless the balance of convenience is strongly in favor of the defendant, plaintiff's choice of forum should not, or should rarely, be disturbed.  *E. & J. Gallo* Winery, *id.*  Affidavits or declarations are required to identify key witnesses and a generalized statement of their anticipated testimony.  *Id*.  "Generally, the court affords plaintiff's choice of forum great weight ... However, when judging the weight to be given to plaintiff's choice of forum, consideration must be given to the respective parties' contact with the chosen forum.  'If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter,' plaintiff's choice 'is entitled only minimal consideration.'"  *DeFazio v. Hollister Employee Share Ownership Trust*, 406 F.Supp.2d 1085, 1088 (E.D.Cal.2005), citing *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir.1987), *cert. denied*, 485 U.S. 993 (1988).  "[T]he difference in substantive law will not be relevant to transfer under 28 U.S.C. § 1404(a) ... A transfer under § 1404(a) results in a change of courtrooms, not a change of law."  *Ravelo Monegro v. Rosa,* 211 F.3d 509, 513 n.3 (9th Cir.2000), *cert. denied sub nom. San Francisco Baseball Associates, L.P. v. Ravelo Monegro*, 531 U.S. 1112 (2001).

Davis argues that transfer of this action to the United States District Court for the District of Colorado pursuant to Section 1404(a) is unavailable because Davis is not subject to personal jurisdiction in Colorado and, thus, the District of Colorado is not a forum where this lawsuit "might have been

brought."

Davis'S contention is without merit.  Davis as the plaintiff in this litigation could have filed this lawsuit in federal court in Colorado.  The forum selection clause in the final Purchase Order did not limit the parties to one particular jurisdiction over another; it was the choice of the party who filed the action.  28 U.S.C. § 1391(a) and (c) make clear that venue for Davis' action would have been proper if the action had been filed in the District of Colorado as that is the defendant's residence and where part of the contract's performance occurred, *i.e.*, fabrication of the steel.

As to the location where the contract was negotiated and executed, the record establishes that the contract was negotiated and finalized by mail and email between Davis and Frontier.  This factor is neutral.

As to the state that is most familiar with governing law, this requires a determination of choice of law.  "Federal courts sitting in diversity must apply 'the forum state's choice of law rules to determine the controlling substantive law.'" *Fields v. Legacy Health System*, 413 F.3d 943, 950 (9th Cir.2005).  As explained in *Discover Bank v. Superior Court*, 36 Cal.4th 148, 173-174 (2005):

> 'If the trial court finds that the ... claims [at issue] fall within the scope of a choice-of-law clause, it must next evaluate the clause's enforceability pursuant to the analytical approach reflected in section 187, subdivision (2) of the Restatement Second of Conflict of Laws (Restatement).  Under that

approach, the court must first determine:
"(1) whether the chosen state has a
substantial relationship to the parties or
their transaction, or (2) whether there is
any other reasonable basis for the parties'
choice of law.  If neither of these tests is
met, that is the end of the inquiry, and the
court need not enforce the parties' choice of
law.  If, however, either test is met, the
court must next determine whether the chosen
state's law is contrary to a fundamental
policy of California.  If there is no such
conflict, the court shall enforce the
parties' choice of law.  If, however, there
is a fundamental conflict with California
law, the court must then determine whether
California has a 'materially greater interest
than the chosen state in the determination of
the particular issue ....'" (Rest., § 187,
subd. (2).)  If California has a materially
greater interest than the chosen state, the
choice of law shall not be enforced, for the
obvious reason that in such circumstance we
will decline to enforce a law contrary to
this state's fundamental policy."'

The final Purchase Order provides that "[t]his PURCHASE
ORDER shall be construed and enforced under the laws of the state
of Colorado."  Davis's January 10, 2008 revision of this
paragraph in the final Purchase Order does not negate this
provision.  The January 10, 2008 revision only states:
"paragraph 6 will be changed to assert that the prevailing
*jurisdiction* for any legal action filed will be determined by the
complaining party."  (Emphasis added).

Colorado has a substantial relationship to the parties and
to the transaction.  Frontier is domiciled in Colorado, the
engineering and fabrication of the steel building by Frontier
occurred in Colorado.

Because Colorado has such a substantial relationship, it

must be determined whether Colorado's law is contrary to a
fundamental policy of California. Restatement Second of Conflict
of Laws, § 187, Comment g, provides:

> To be 'fundamental,' a policy must in any
> event be a substantial one. Except perhaps
> in the case of contracts relating to wills, a
> policy of this sort will rarely be found in a
> requirement, such as the statute of frauds,
> that relates to formalities ... Nor is such a
> policy likely to be represented by a rule
> tending to become obsolete, such as a rule
> concerned with the capacity of married women
> ..., or by general rules of contract law,
> such as those concerned with the need for
> consideration ... On the other hand, a
> fundamental policy may be embodied in a
> statute which makes one or more kinds of
> contracts illegal or which is designed to
> protect a person against the oppressive use
> of superior bargaining power. Statutes
> involving the rights of an individual insured
> as against an insurance company are an
> example of this sort ... To be 'fundamental'
> within the meaning of the present rule, a
> policy need not be as strong as would be
> required to justify the forum in refusing to
> entertain suit upon a foreign cause of action
> under the rule of § 90.

Davis contends that California public policy favors the
application of its own laws to those contracts which are to be
performed in California, citing California Civil Code § 1646:

> A contract is to be interpreted according to
> the law and usage of the place where it is to
> be performed; or, if it does not indicate a
> place of performance, according to the law
> and usage of the place where it is made.

Section 1646 does not articulate a fundamental policy of the
state of California; Section 1646 may be negated by a valid
choice-of-law provision in a contract.

Davis, noting that the FAC alleges that Frontier did not

possess a California contractor's license, contends that

California public policy generally requires those who work in

California to be licensed by California.  California Business &

Professions Code § 7026 provides that, for purposes of the

license requirements:

> 'Contractor' for the purposes of this
> chapter, is synonymous with 'builder' and,
> within the meaning of this chapter, a
> contractor is any person who undertakes to or
> offer to undertake to, or purports to have
> the capacity to undertake to, or submits a
> bid to, or does himself or herself or by or
> through others, construct, alter, repair, add
> to, subtract from, improve, move, wreck or
> demolish any building ... or other structure,
> project, development or improvement, or to do
> any part thereof, including the erection of
> scaffolding or other structures or works in
> connection therewith, ... and whether or not
> the performance of work herein described
> involves the addition to, or fabrication
> into, any structure, project, development or
> improvement here described of any material or
> article of merchandise.  'Contractor'
> includes subcontractor and specialty
> contractor ....

California Business & Professions Code § 7031 provides:

> (a) Except as provided in subdivision (e), no
> person engaged in the business or acting in
> the capacity of a contractor, may bring or
> maintain any action, or recover in law or
> equity in any action, in any court of this
> state for the collection of compensation for
> the performance of any act or contract where
> is license is required by this chapter
> without alleging that he or she was a duly
> licensed contractor at all times during the
> performance of that act or contract,
> regardless of the merits of the cause of
> action brought by the person, except that
> this prohibition shall not apply to
> contractors who are each individually
> licensed under this chapter but who fail to
> comply with Section 7029.

40

> **(b) Except as provided in subdivision (e), a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract.**
>
> **...**
>
> **(e) The judicial doctrine of substantial compliance shall not apply under this section where the person who engaged in the business or acted in the capacity of a contractor has never been a duly licensed contractor in this state. However, notwithstanding subdivision (b) of Section 143, the court may determine that there has been substantial compliance with licensure requirements under this section if it is shown at an evidentiary hearing that the person who engaged in the business or acted in the capacity of a contractor (1) had been duly licensed as a contractor in this state prior to the performance of the act or contract, (2) acting reasonably and in good faith to maintain proper licensure, (3) did not know or reasonably should not have known that he or she was not duly licensed when performance of the act or contract commenced, and (4) acted promptly and in good faith to reinstate his or her license upon learning it was invalid.**

In *Hydrotech Systems, Ltd. v. Oasis Waterpark,* 52 Cal.3d 370 (1991), the Supreme Court held that Section 7031 barred an action by an out-of-state corporation that subcontracted to provide labor and materials for a wavemaking machine in a water park project against the project's owners to recover its payment, regardless of the unique nature of the service provided or the fact that it was an isolated transaction in California. The Supreme Court explained:

> The purpose of the licensing law is to

41

> protect the public from incompetence and
> dishonesty in those who provide building and
> construction services ... The licensing
> requirements provide minimal assurance that
> all persons offering such services in
> California have the requisite skill and
> character, understand applicable local laws
> and codes, and know the rudiments of
> administering a contracting business ....
>
> Section 7031 advances this purpose by
> withholding judicial aid from those who seek
> compensation for unlicensed contract work.
> The obvious statutory intent is to discourage
> persons who have failed to comply with the
> licensing law from offering or providing
> their unlicensed services for pay.
>
> ...
>
> Hydrotech claims the law's interests in
> competence and public protection were not
> disserved in this case because its agreement
> to design and construct the surfing pool for
> Oasis was an 'isolated' California
> transaction.  However, as the Court of Appeal
> observed, 'It is manifest that the concern
> for the public inherent in section 7031 is
> just as applicable to a project done by an
> out-of-state contractor with few jobs in
> California as to a project done by a
> California contractor who performs only one
> job in California before going out of
> business.'  That Hydrotech's activities in
> California were 'isolated' is not clear from
> the pleadings, but even if they were, there
> is no implied exception for 'isolated'
> transactions by foreign contractors ....
>
> Hydrotech also begs the question by
> suggesting that Oasis' need for its unique
> skills should exempt if from section 7031.
> As noted, the licensing law achieves its
> protective purpose by requiring that a
> contractor's competence and qualifications,
> however unique, be examined and certified by
> the expert agency charged with the law's
> enforcement.

**52 Cal.3d at 995-997.**

42

Contracts by unlicensed contractors "are considered illegal, i.e., malum prohibitum as opposed to malum in se." *Ranchwood Communities Limited Partnership v. Jim Beat Construction Co.,* 49 Cal.App.4th 1397, 1409 (1996), citing *S & Q Construction Co. v. Palma Ceia Development Organization*, 179 Cal.App.2d 364, 367 (1960); *see also MW Erectors, Inv. v. Niederhauser Ornamental and Metal Works Co., Inc.*, 36 Cal.4th 412, 435-436 (2005):

> Generally a contract made in violation of a regulatory statute is void. Under this general rule, where a law requires, for regulatory rather than revenue purposes, that one procure a license before offering or performing certain services and provides a penalty for violation, the contract of an unlicensed person to perform such services will not be upheld ... 'This rule is based on the rationale that "the public importance of discouraging such prohibited transactions outweighs equitable considerations of possible injustice between the parties." ...'
> ....

*See also* California Business & Professions Code § 7028(a)(making it a misdemeanor for a person to engage in the business or act in the capacity of a contractor within California without having a license); California Business & Professions Code §§ 7028.3, 7028.4 (allowing registrar to apply to Attorney General or district attorney for injunction restraining unlicensed contractor).[7]

California's statutes requiring that contractors be licensed

---

[7]Davis, relying on California Code of Civil Procedure § 410.42, argues that the choice of law provision at issue is unenforceable. By its terms, Section 410.42 does not apply to Frontier; it is undisputed that Frontier is not a subcontractor with principle offices in California.

in California is fundamental.  According to the CLSI National Contractor License Service website, in Colorado: "State license required for electrical, asbestos removal, plumbers and pesticides trade; no state license for general contracting. Licensing may be required on a city or county level."  *See also Walker Adjustment Bureau v. Wood Bros. Homes, Inc.*, 41 Colo.App. 26, 582 P.2d 1059, 1063 (1978)("Colorado does not require state licensing of construction contractors.")  5 *Bruner & O'Connor Construction Law § 1622*, states that "[a]s a general rule, unless a statute provides otherwise, one who has already paid an unlicensed contractor or design professional is not entitled to recover it."  "California is one of the few jurisdictions that statutorily permits a contractee to seek disgorgement of monies paid to an unlicensed contractor."  *Id.*  Colorado law is contrary to California's fundamental policy of California of limiting unlicensed contractors.  As Davis contends, "[a]llowing Colorado law to govern would be a vehicle by which out of state contractors could circumvent California's Contractor's State Licensing Law and the policies it seeks to advance among which include offering unlicensed services for pay."

Because of this conclusion, it must be determined whether California has a materially greater interest than Colorado in the determination of the particular issue.  "[A] court can decline to enforce the parties' contractual choice-of-law provision only if the interests of the forum state are 'materially greater' than those of the chosen state, *and* the forum state's interests would

44

be more seriously impaired by enforcement of the parties'
contractual choice-of-law provision than would the interests of
the chosen state by application of the law of the forum state."
*Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th
881, 898-899 (1998).  California's interests are materially
greater than those of Colorado.  Frontier is alleged to be an
unlicensed contractor who performed work on a California public
works project located in California.  California's interests in
protecting the public from unlicensed contractors would be more
seriously impaired if the choice-of-law provision were enforced.
Colorado has no commensurate statutory scheme, policy or
interest.

For these reasons, the contractual choice-of-law provision
is unenforceable.  The factor of the state most-familiar-with
governing-law weighs in favor of Davis for this reason.  As to
the plaintiff's choice of forum, Davis was entitled by virtue of
the forum selection clause to bring this action in California.

As to the respective parties' contacts with California,
Davis' contacts with California are substantial; it does business
in California and was the general contractor on the Project of
which Frontier's and Davis's subcontract was a part.  Frontier's
contacts with California are very minimal and appear to be
limited to this one contract.

As to the contacts relating to Davis' causes of action in
California, this factor appears to be neutral.  The gravamen of
Davis' claim against Frontier is Frontier's alleged delay in

performing the contract as well as Frontier's alleged failure to disclose to Davis that it did not possess a California Contractor's License. This is not a case in which it is alleged that the goods provided were defective.

As to the differences in the costs of litigation in the two forums, this factor weighs in favor of Davis. Davis' list of prospective witnesses is substantially larger than that of Frontier.

As to the availability of compulsory process to compel attendance of unwilling non-party witnesses, this factor weighs in favor of Davis because Davis has listed more non-party witnesses than Frontier, who lists only one.

As to the ease of access to sources of proof, this factor is neutral.

The most essential factor in this weighing process is the convenience of the parties. Frontier is a small company. Ms. Bresnick's declaration of the effect on the operations of the company if this action is tried in California is not disputed by Davis, nor is Ms. Bresnick's need to care for her disabled and very ill husband and her minor son.

Frontier's motion to transfer this action pursuant to Section 1404(a) is DENIED. The contract contained a forum selection clause and California's public policy of regarding Davis's claim that Frontier was an unlicensed contractor is strong. Other than the factor of convenience, the other factors either weigh in favor of Davis or are neutral. Although there is

inconvenience to Frontier in litigating the action in California, that inconvenience is not so substantial to cause the transfer of the action to Colorado. Discovery can be conducted by electronic means. The Court anticipates a relatively short trial with little disruption of Frontier's business in this day of electronic communication; Ms. Bresnick undoubtedly can make arrangements for the care of her husband and son during the trial or she can arrange to appear by video conferencing technology.

Frontier's motion to transfer the action pursuant to Section 1404(a) is DENIED.

## CONCLUSION

For the reasons stated:

1.  Frontier's second motion to dismiss for lack of personal jurisdiction, for change of venue or to transfer action is DENIED;

2.  Davis's counsel shall prepare and lodge a form of order consistent with this Memorandum Decision within five (5) court days of service of this Memorandum Decision.

IT IS SO ORDERED.

Dated:   **May 26, 2009**                    _____/s/ Oliver W. Wanger_____
                                                     UNITED STATES DISTRICT JUDGE