IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVIS MORENO CONSTRUCTION, INC., <br><br> Plaintiff, <br><br> vs. <br><br> FRONTIER STEEL BUILDINGS CORPORATION, <br><br> Defendant. | No. CV-F-08-854 OWW/SMS <br><br> MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT WITHOUT PREJUDICE (Doc. 44) |

Plaintiff Davis Moreno Construction, Inc. ("Davis" or "DMCI") moves for leave to file a Second Amended Complaint to name additional defendants:

- NCI Group, Inc., a Nevada corporation dba NCI Building Systems, and MBCI with its principal place of business in Texas;

- Package Industries, Inc., a Massachusetts corporation with its principal place of business in Massachusetts;

- Ramakanto Adhikary, an individual domiciled in Colorado.

1

Davis asserts that it has independent claims against these third parties and subcontractors to Defendant Frontier Steel Buildings Corporation (hereafter referred to as Frontier).

This action concerns a public works project for the Kern Unified School District for the construction of a Records Retention Facility (the Project). Davis submitted a bid and was awarded the prime contract. Davis, a licensed contractor, contracted with subcontractors and suppliers including Frontier as to the job. The proposed Second Amended Complaint alleges that Davis and Frontier entered into a contract "for FRONTIER to provide certain supplies to DMCI for the Project;" that "the contract specifically required in paragraph (3) strict time requirements for the submission and performance of the terms of the DMCI/FRONTIER Contract;" that Frontier is approximately six months late in "the performance of its submittals;" that, on June 16, 2008, Frontier "announced its position was to stop work on the project altogether;" and that Frontier has not performed pursuant to the contract deadlines and has caused significant delays to the Project. The proposed Second Amended Complaint then alleges:

> 16. DMCI is informed and believes and thereon alleges that contemporaneous with the formation of the DMCI/FRONTIER Contract, FRONTIER entered into a written contract(s) or other contractual or legal relationship(s) with the other defendants in this action.
>
> 17. DMCI is informed and believes and thereon alleges, the written contract(s) or other contractual or legal relationship(s) between FRONTIER and the other Defendants: a)

were intended to benefit DMCI; b) were formed for the purpose of providing FRONTIER with certain steel materials, steel fabrication, design and related services necessary for FRONTIER's performance of the DMCI/FRONTIER Contract; and c) obligated Defendants to supply FRONTIER with steel related materials and services for DMCI's benefit.

18.  DMCI is further informed and believes and thereon alleges the [sic] each of the Defendants made express or implied warranties concerning the merchantability and fitness of the goods and services they were to provide and that these warranties were intended to benefit DMCI and the Project.

19.  DMCI is further informed and believes and thereon alleges, that the existence of the Contract(s), the business relationship between FRONTIER and Defendants in connection with this Project as well as related facts and circumstances made it foreseeable to the Defendants that DMCI would be damaged in the event Defendants breached their warranty obligations and/or duty of care associated with its respective performance and imposed by law.

20.  DMCI is informed and believes and thereon alleges that the Defendants have breached their warranty obligations in connection with the Project, and failed to meet the applicable standard of care, both of which were intended to benefit DMCI and the Project.

21.  As a result of Defendants' breaches of contract, warranty and/or other acts and omissions related to the Project, DMCI has suffered liquidated damages at $1,000 per day for approximately 150 days; anticipated additional liquidated damages at a cost to DMCI at $1,000 per day; extended performance costs at the rate of $600 per day charged directly to DMCI by the project owner; and anticipated additional liquidated damages at a cost to DMCI of $600 per days with possible extended performance costs and other impact costs; as well as extended costs for DMCI to mitigate its damages by contracting with

>others to perform the Defendants' dues on the Project at an estimated cost fo $70,000.
>
>22.  In addition to the foregoing and as a direct and proximate result of the acts and omissions of Defendants' and each of them as alleged herein above, DMCI has suffered, or will suffer, damages by penalties from the Project's owner for extended performance costs and other impact costs by other subcontractors of DMCI; costs for excessive administrative and support activities for failed performance pursuant to the prime contract on the Project; and for recovery of payments previously made to FRONTIER to date.

The Proposed Second Amended Complaint adds causes of action against all Defendants for negligence and breach of express and/or implied warranties.

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleadings "by leave of court" and that "leave shall be freely given when justice so requires." Fed.R. Civ.P. 15(a).  This rule should be applied with "extreme liberality" in favor of allowing amendments.  *See Jones v. Bates*, 127 F.3d 839, 847 n. 8 (9th Cir. 1997).  The Ninth Circuit has also held that a court should consider four factors in determining whether to grant leave to amend.  They are (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party.  *See United States v. Pend Oreille Pub. Util. Dist. No.1*, 926 F.2d 1502, 1511-151212 (9th Cir. 1991) (leave to amend should have been granted in the absence of prejudice and bad faith and where amendment was not frivolous); *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).  "These factors, however, are not of equal weight in

that delay, by itself, is insufficient to justify denial of leave to amend." *DCD Programs*, 833 F.2d at 186; *see also Jones*, 127 F.3d at 847 n.8.  "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight ... Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003).  "While Fed. R. Civ. P. 15(a) encourages leave to amend, district courts need not accommodate futile amendments." *Newland v. Dalton*, 81 F.3d 904, 907 (9th Cir. 1996) (citing *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983).

Frontier opposes the motion to amend.  Frontier submits the Declaration of Terry Burk, a Frontier employee, who avers that he is personally familiar with the Project with Davis.  Mr. Burk avers:

> 1. Frontier's contracts with its suppliers, including Package Industries, Inc., and MBCE are on the manufacturer/fabricator's forms and do not include any provision expressing an intent to create a third-party beneficiary status for any customer of Frontier.
>
> 2. The agreement with Ramakanta Adhikary does not include an agreement to create a third-party beneficiary status for any customer of Frontier.
>
> 3. Frontier does not have a claim against either of these three suppliers with regard to the Kern Unified School District Project with Davis Moreno for delayed delivery, faulty delivery or negligent performance. Orders are placed with each of these parties for design engineering services, or for

5

>     specified orders for steel, as the case may
>     be, and those orders are delivered to
>     Frontier within a reasonable time within the
>     terms of Frontier's agreements with them.
>     Frontier has no reason to believe that the
>     product delivered by any of these suppliers
>     was defective.
>
>     4.  Adding Frontier's suppliers to the
>     litigation will materially prejudice Frontier
>     because the costs of hiring outside counsel
>     in California and the costs of litigation
>     which will be incurred by Frontier's
>     suppliers hold the serious threat of
>     poisoning the business relationship with
>     Frontier.  These suppliers do a substantial
>     amount of business with Frontier, and Davis
>     Moreno's effort to attack them is an attempt
>     to weaken Frontier's own business and its
>     ability to defend this case.  These legal
>     costs would be incurred to defend unfounded
>     claims.
>
>     5.  The added costs and added time for
>     preparation and for trial caused by
>     increasing the number of parties will also
>     further burden Frontier's ability to defend
>     itself because it will further burden Miranda
>     Bresnick and our small staff as we have
>     previously stated.

Davis replies that the lack of contractual privity between it and Frontier's subcontractors does not render the proposed amendment futile.  Davis cites three California cases which assertedly recognize the claims sought to added to this action.

In *Gilbert Financial Corp. v. Steelform Contracting Co.*, 82 Cal.App.3d 65 (1978), Plaintiff entered into a construction contract with Sheldon Appel Construction Company to be the general contractor for a bank storage building.  Appel subcontracted the roof work to Steelform.  For approximately two years after the building was completed, Appel undertook to

6

correct water leak problems in the building, but was unable to do so.  Plaintiff then retained other engineers and contractors to solve the problem, and they informed Plaintiff that defective workmanship and materials employed by Steelform were responsible for the leakage.  Plaintiff brought an action for negligence and breach of warranty against Steelform.  The trial court dismissed the breach of warranty claim for lack of privity of contract. The Court of Appeals reversed:

> Under the facts of this case we do not need to decide the issue of privity, per se. Under Civil Code section 1559 and the cases interpreting it, we conclude Gilbert is a third party beneficiary of the contract between Appel and Steelform and therefore can sue for breach of the implied warranty of fitness.  California cases permit a third party to bring an action even though he is not specifically named as a beneficiary, if he is more than incidentally benefitted by the contract ... Section 1559 says 'expressly for the benefit of the third party.'  The word 'expressly,' by judicial interpretation, has now come to mean merely the negative of 'incidentally.' ... Gilbert, under our decisional law, qualifies as an intended beneficiary.

*Id.* at 69-70.

In COAC, Inc. v. Kennedy Engineers, 67 Cal.App.3d 916 (1977), a general contractor for the construction of a water treatment plant for a county water district brought an action against an engineering firm, alleging that the water district had executed a contract with the engineering firm for the preparation of an environmental impact report, that the engineering firm breached the contract with the water district by failing to

7

provide an EIR, causing delay and damage to the general contractor, and that the EIR thereafter furnished was defective, causing further construction delays. The trial court dismissed on the ground of uncertainty due to the fact there was no allegation of whether the contract sued upon was express or implied or whether it was written or oral. The Court of Appeal reversed, holding that "[t]he proposed amendment shows that it could easily have been amended so as to bring [the general contractor] under Civil Code section 1559 which reads: 'A contract made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.'" *Id.* at 919.

In *Del E. Webb Corporation v. Structural Materials Company*, 123 Cal.App.3d 593 (1981), the general contractor on a construction project brought an action for damages against a supplier of roofing materials after the general contractor's failure to receive roofing materials due it under its roofing subcontract with its subcontractor. The Court of Appeals ruled:

> Webb's fifth cause of action proceeds upon the theory that an oral agreement was entered into between SMC and DeLancey and that Webb was a third party beneficiary of that contract. SMC contends that there are insufficient facts alleged to establish that such contract was made expressly for the benefit of Webb ....
>
> ...
>
> Webb alleges in its fifth cause of action: 'That in order to provide defendant DeLancey with the roofing materials and other materials needed in the performance of the

> subcontract, and for the benefit of plaintiff, defendants SMC and Does 1 through 50 agreed to supply any and all roofing materials and other materials necessary for the performance of the subcontract between plaintiff and defendant DeLancey and Does 51 through 100.'
>
> If SMC made such an agreement, Webb was its ultimate beneficiary and would be regarded as a creditor beneficiary.

*Id.* at 606-607.

Davis cites *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.1988):

> [A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense ... *see generally* 3 J. Moore, *Moore's Federal Practice* ¶ 15.08[4] (2d ed.1974) (proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)).

Davis claims that, in addition to the damages associated with the alleged delay, it has discovered design errors, engineering errors, and fabrication errors which will need to be remedied to the satisfaction of the project owner. Davis contends that the allegations in the proposed SAC are sufficient to state a claim against these new defendants because it cannot fairly be said that no set of facts can be developed to support these claims.

However, there has been a sea change in the pleading requirements to withstand a Rule 12(b)(6) motion to dismiss. "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is

plausible on its face.'" *Williams ex rel. Tabiu v. Gerber Products Co.,* 523 F.3d 934, 938 (9th Cir.2008), quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007). "'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, *id.* at 555. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully, *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. In *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009), the Supreme Court explained:

> Two working principles underlie our decision in *Twombley*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitations fo the elements of a cause of action, supported by mere conclusory statements, do not suffice ... Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a

10

> plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss ... Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense ... But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.' ....
>
> In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Here, the proposed SAC is completely devoid of facts to support Davis's claims of third party beneficiary and breach of warranty/negligence, thereby making the allegations subject to dismissal based on *Iqbal*. The gravamen of Davis's allegations against Frontier is delay in compliance with the contract. Davis seeks to add additional parties on a breach of warranty theory concerning the materials used by Frontier, which, according to the proposed Second Amended Complaint, have not been delivered to Davis pursuant to the contract. The addition of these defendants will not serve the efficient resolution of Davis's claims against Frontier.

However, Frontier's claims of prejudice are unpersuasive.

Frontier bids on and furnishes materials for construction projects.  An inherently foreseeable risk in such business is litigation over construction contracts, including allegations of delay or faulty materials.  A party opposing a motion to amend has the burden of demonstrating prejudice, which must be substantial.  *In re Circuit Breaker Litigation*, 175 F.R.D. 547, 551 (C.D.Cal.1997).  This action is in its early stages; there has been no scheduling conference.[1]

Davis's motion for leave to amend is DENIED WITHOUT PREJUDICE.  If Davis is able to propose a Second Amended Complaint alleging the specific facts upon which it relies against the additional defendants for negligence and breach of warranty, Davis may again move for leave to amend.

IT IS SO ORDERED.

Dated:   November 9, 2009                        /s/ Oliver W. Wanger
                                          UNITED STATES DISTRICT JUDGE

---

[1] Frontier's assertion that the Court will not have personal jurisdiction over the additional Defendants is not well-taken.  Personal jurisdiction is waivable and the lack of it asserted only by the party affected.