1
2
3
4
5

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

6
7

| | |
|---|---|
| **DAVIS MORENO CONSTRUCTION, INC.,** | **1:08-cv-00854-OWW-SMS** |
| **Plaintiff,** | **MEMORANDUM DECISION ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGEMENT** |
| **v.** | |
| **FRONTIER STEEL BUILDINGS CORP.,** | |
| **Defendant.** | |

8
9
10
11
12
13
14
15

### I.  INTRODUCTION.

16
17

Plaintiff Davis Moreno Construction, Inc. ("Plaintiff") proceeds with this diversity action for damages against Defendant Frontier Steel Buildings Corp. ("Defendant").

18
19
20

Plaintiff filed a motion for summary judgment and motion to dismiss Defendant's counterclaim on May 17, 2010.  (Doc. 91).  Defendant filed opposition to Plaintiff's motion for summary judgment on August 16, 2010.  (Doc. 101).  Defendant also filed a cross-motion for summary judgment on August 16, 2010.  (Doc. 100).

21
22
23
24
25

Plaintiff filed a reply to Defendant's opposition on August 23, 2010.  (Doc. 102).

26

///

27

///

28

**1**

## II. **FACTUAL BACKGROUND**.

This action concerns a contract between Plaintiff and Defendant related to a public works project for the Kern Unified School District for the construction of its Records Retention Facility (the "Project") in Kern County, California. Plaintiff submitted a bid to the School District and was awarded the prime contract in connection with the Project.  As the prime contractor, Plaintiff engaged subcontractors and suppliers, including Defendant.

On October 8, 2007, Defendant submitted a bid to Plaintiff quoting a price for delivery of "the steel structure for the KUSD Office Record Retention Facility." (Stephen Davis Decl., Ex. A.). The facsimile was addressed to "contractors/estimators" and contained a representation by Defendant that "all components in our bid will meet or exceed your specifications and codes for this project." (Id.).  The price quoted by Defendants for the steel structure was $145,494.00. (Id.).  Defendant's bid also stated "We can assist you in erecting this structure for this price $ 70,750.00." (Id.).  The last page of the bid contained a design drawing.  Defendant's bid also contained the following provision under the heading "Standard Notes and Conditions:"

> 6. Quotation is not a contract, but an offer to sell, which can only be accepted by a timely execution of a purchase order contract.

(Id.).

By letter dated December 6, 2007, Plaintiff notified Defendant of its intent to award Defendant a contract for the steel structure.  Plaintiff's letter stated: "It is the intent of Davis Moreno Construction, Inc. to issue a subcontract to Frontier Steel

**2**

Building Corp. in the amount of $145,494.00 for Pre-Engineered Metal Building in accordance with the Plans and Specifications by BFGC Architects Planners Inc., and Addendums No. 1 thru 5.  You should receive a contract within the next ten (10) days." (Id., Ex. B).

On or about December 11, 2007, Plaintiff sent Defendant a Purchase Order for pre-fabricated steel to be used in constructing the Project. (Id., Ex. C).  Defendant sent Plaintiff a facsimile on January 10, 2008 which contained a version of Plaintiff's purchase order modified by interlineation as well as a separate purchase order authored by Defendant. (Id., Ex. D).[1]  Plaintiff responded to Defendant's modified Purchase Order in a letter dated January 10, 2008 that indicated which provisions of the modified Purchase Order Plaintiff was agreeable to.  (Id., Ex. E). Plaintiff's letter was accompanied by a copy of Defendant's modified Purchase Order signed on behalf of Plaintiff; the signed purchased order contained a handwritten notation which incorporated Plaintiff's January 10, 2008 letter into the agreement.  (Id)

Pursuant to the Purchase Order signed by Plaintiff, Defendant agreed to generate "anchor bolt and structural drawings," "shop drawings and engineering calculations," "fabrication drawings," and to deliver the fabricated materials to the job site within time periods specified in the Purchase order.  (Id., Ex. E).  The materials Defendant agreed to provide included primary and secondary steel, roof panels, steel framing, and other materials. The Purchase Order contains a provision which states:

[1] The date on Defendant's letter is January 10, 2007--this appears to be a typographical error in light of the sequence of the parties' correspondence.

3

> the supplying of sealed engineering and drawings by FSBC does not imply or constitute an agreement that FSBC or its building design team is acting as the engineer of record or the design professional for any construction project.

(Id. at 3). The Purchase Order further provides:

> It is the building purchaser's responsibility to obtain experienced personnel, proper tools, and equipment to erect this building in a safe competent and professional manner.

(Id. at 4).  The Purchase Order also contains the following provision:

> Any corrections of mis-fabrication or material purchases for shortened material must be approved by and/or performed as directed by FSBC in writing prior to work being done or material being purchased. FSBC may, at its option, authorize the work to be performed or material purchased by the metal building purchaser or it may perform the work or provide the material itself.

(Id.).

Defendant performed various obligations under the contract, and Plaintiff made several payments to Defendant.  In total, Plaintiff paid Defendant $168,025.90.

### III. **LEGAL STANDARD**.

Summary judgment/adjudication is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate

**4**

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted).

Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). With respect to an issue as to which the non-moving party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.

When a motion for summary judgment is properly made and supported, the non-movant cannot defeat the motion by resting upon the allegations or denials of its own pleading, rather the "non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Soremekun*, 509 F.3d at 984. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[A] non-movant must show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in his favor." *Id*. (emphasis in original). "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute exists, a

**5**

district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### IV. DISCUSSION.

**A. Summary Judgment on Plaintiff's Second Cause of Action**

**1. Legislative Framework**

California's Contractors' State License Law ("CSLL") establishes a comprehensive legislative scheme governing the construction business in California. *See* Cal. Bus. & Prof. Code § 7000 *et seq.*; *Alatriste v. Cesar's Exterior Designs, Inc.*, 183 Cal. App. 4th 656, 664 (Cal. Ct. App. 2010). The CSLL requires contractors performing construction work to be licensed at all times during the performance of such work. *See, e.g.*, *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co.*, 36 Cal. 4th 412, 425 (Cal. 2005) (contractor violates CSLL if, "*at any time* during performance of an agreement for contractor services, he or she was not duly licensed.") (emphasis in original). The CSLL defines "contractor" in pertinent part as follows:

> 'Contractor,' for the purposes of this chapter, is synonymous with 'builder' and, within the meaning of this chapter, a contractor is any person who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or herself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith, or the cleaning of grounds or structures in connection therewith

Cal. Bus. & Prof. Code § 7026 (2010). Section 7026.1(b) provides that the term "contractor" includes:

Any person, consultant to an owner-builder, firm, association, organization, partnership, business trust, corporation, or company, who or which undertakes, offers to undertake, purports to have the capacity to undertake, or submits a bid, to construct any building or home improvement project, or part thereof

CAL. BUS. & PROF. CODE § 7026.1(b)(2010).

The CSLL is intended to protect the public by providing "minimal assurance that all persons offering contractor services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business." *Alatriste*, 183 Cal. App. 4th at 664. Because of the strength and clarity of the policy interests underlying the CSLL, *Hydrotech Systems, Ltd., v. Oasis Waterpark*, 52 Cal. 3d 988, 995 (Cal. 1991), the California Supreme Court has given a broad, literal interpretation to the CSLL's enforcement provisions, *White v. Cridlebaugh*, 178 Cal. App. 4th 506, 518 (Cal. Ct. App. 2009) (citation omitted).

The CSLL shields a person who utilizes the services of an unlicensed contractor from lawsuits by that contractor to collect payment for unlicensed work. *E.g. White*, 178 Cal. App. 4th at 518. Section 7031(a) provides:

Except as provided in subdivision (e), no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person, except that this prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029.

**7**

1   CAL. BUS. & PROF. CODE § 7031(a).  The Legislature complemented the

2   shield created by section 7031(a) by adding a sword that allows

3   recovery of all compensation paid to a contractor for performing

4   unlicensed work.  *Id.* at 519.  Section 7031(b) provides in

5   pertinent part:

6        a person who utilizes the services of an unlicensed
         contractor may bring an action in any court of competent
7        jurisdiction in this state to recover all compensation
         paid to the unlicensed contractor for performance of any
8        act or contract.

9   CAL. BUS. & PROF. CODE § 7031(b) (2010).  "Section 7031(b) was

10  designed to treat persons who have utilized unlicensed contractors

11  consistently, regardless of whether they have paid the contractor

12  for the unlicensed work."  *White*, 178 Cal. App. 4th at 520.

13      The language contained in section 7031 embodies an "all-or-

14  nothing" philosophy aimed at deterring persons from offering or

15  providing unlicensed contractor services for pay.  *E.g. MW*

16  *Erectors*, 36 Cal. 4th at 426, 430.  Section 7031 does not permit an

17  unlicensed entity to recover partial compensation by narrowly

18  segmenting the licensed and unlicensed portions of their

19  performance.  *MW Erectors*, 36 Cal. 4th at 426.  Where applicable,

20  section 7031 bars a person from recovering or retaining

21  compensation for any work performed in connection with an agreement

22  for services requiring a contractor's license unless proper

23  licensure was in place at all times during such contractual

24  performance.  *See White*, 178 Cal. App. 4th at 518 (discussing

25  section 7031(a)(citation omitted).

26      **2. Defendant's Status Under the CSLL**

27      Whether an entity performed or undertook to perform the work

28  of a contractor depends in part on the nature and scope of

**8**

contractual obligations the entity assumed in connection with a project. *See The Fifth Day, LLC v. Bolotin*, 172 Cal. App. 4th 939, 948 (Cal. Ct. App. 2009) (reviewing contract's terms to determine whether entity was a contractor for purposes of the contract); *see also WSS Industrial Construction, Inc. V. Great Western Contractors, Inc.*, 162 Cal. App. 4th 581, 590 n.6, 592 (2008)(same); *Banis Restaurant Design, Inc. v. Serrano*, 134 Cal. App. 4th 1035, 1044 (Cal. Ct. App. 2005) (same); *Scientific Cages, Inc. v. Banks*, 81 Cal. App. 3d 885, 888 (Cal. Ct. App. 1978 (same). Acts performed by an entity outside of, but related to, a contract are also relevant to the issue of whether the entity performed or undertook to perform the work of a contractor. *See Nash v. Taylor*, 327 Fed. Appx. 718, 720 (9th Cir. 2009) (unpublished) (evaluating "parties' conduct, including the course of negotiations" in order to determine whether section 7031(a) applied); *see also MW Erectors*, 36 Cal. 4th at 427-28) (noting that "parties do sometimes operate without, or beyond the boundaries of, a formal contractual arrangement" and affirming that "the CSLL does not require contractors to operate exclusively by formal contract; it simply seeks to deter them from offering or performing unlicensed services for pay").

It is beyond doubt that Defendant was a contractor as defined by sections 7026 and 7026.1 when it submitted its initial bid to Plaintiff on October 8, 2007, as the bid offered to "assist [Plaintiff] in erecting this structure for this price: $70,750.00." (Plaintiff's MSJ, Ex. A at 3); CAL. BUS. & PROF. CODE §§ 7026, 7026.1 ("a contractor is any person who...submits a bid to...construct,

**9**

1  ...any building...or part thereof").[2]   Whether Defendant was a
2  contractor for the purposes of performance of the parties' ultimate
3  contractual agreement presents a separate question, because the
4  contract indicates that Plaintiff is responsible for erecting the
5  structure.  (Plaintiff's MSJ, Ex. E).

6       Contract interpretation on undisputed facts is a question of
7  law.  *E.g. The Fifth Day*, 172 Cal. App. 4th at 946. "A contract
8  must be so interpreted as to give effect to the mutual intention of
9  the parties as it existed at the time of contracting."  Cal. Civ.
10 Code. § 1636.  A contract's meaning must be ascertained from the
11 contract's language if it is clear and explicit.  Cal. Civ. Code.
12 § 1638.  Unless the parties have indicated a special meaning, the
13 contract's words are to be understood in their ordinary and popular
14 sense.  Cal. Civ. Code. §  1644; *Crawford v. Weather Shield Mfg.*,
15 *Inc.*, 44 Cal. 4th 541, 552 (Cal. 2008).  Language in a contract
16 must be construed in the context of the instrument as a whole and
17 in light of all the circumstances between the parties.  *E.g. Bay*
18 *Cities Paving & Grading v. Lawyers' Mutual Ins. Co.*, 5 Cal. 4th
19 854, 867 (Cal. 1993).

20      The parties' contract is comprised of a purchase order, bill
21 of values, and a letter Plaintiff returned with the executed
22 purchase order and bill of values purporting to clarify the
23 agreement.  *See* CAL. COM. CODE § 2207 (2010) (additional terms
24 included in an acceptance become part of the contract unless (1)
25 offer expressly limited acceptance to terms of offer; (2) terms

26
27 [2] Although Defendant's bid did not create a contractual obligation, under
    California law, the bid was irrevocable, and Plaintiff could have held Defendant
28 to its offer to erect the building for the specified price. *Norcross v. Winters*,
    209 Cal. App. 2d 207, 216 (Cal. Ct. App. 1962).

**10**

1   materially alter the contract; (3) notification of objection to the

2   terms is given within a reasonable time).   The bill of values

3   provides the following payment schedule:

> 1. 8% of building cost due upon receipt of anchor bolt
> and structural drawings
> 2. 10% of building cost due upon approval of shop
> drawings and engineering calculations
> 3. 8% of building cost upon delivery of detail
> fabrication drawings to manufacturer
> 4. COD payment due upon delivery of building materials to
> job site.

9   (Stephen Davis Decl., Ex. E).   The purchase order indicates that

10  Defendant promised to provide design engineering for the Project

11  and to provide the following materials:

> 1. Primary and Secondary Steel
> 2. Standing Seam Roof Panels
> 3. Metal Panels at the Roof Mechanical Screen
> 4. Steel Framing for Mechanical Screen
> 5. Mansard Rigid Frames
> 7. Softfit Structure at Overhangs
> 8. Metal Stud and Parapet Framing
> 9. Internal Gutters
> 10. Gutters and Downs
> 11. Full Trim Package

(Id.).   The purchase order also sets forth additional terms and

conditions; these terms and include, *inter alia*, the following:

> ¶10- Special field inspections may be required, these
> inspections must be done by a third independent third
> [sic] party

> ¶11- Purchaser is to review the shipping manifest with
> the truck driver at the time of delivery and is
> responsible at that time to verify all material received
> is correct as to type and quantity listed on the shipping
> manifest...if FSBC has not shipped all items indicated on
> the shipping manifest; or if some items necessary to
> provide the building system as approved and released to
> fabricate in writing were not provided or were not listed
> on the shipping manifest, then FSBC will provide these
> items at no charge, F.O.B. jobsite

> ¶13- Any corrections of mis-fabrication or material
> purchases for shorted material must be approved by and/or
> performed as directed by FSBC in writing prior to work

**11**

1   being done or material being purchased.  FSBC may, at its
2   option, authorize the work to be performed or material
    purchased by the metal building purchaser or it may
3   perform the work or provide the material itself.  FSBC is
    not liable for any consequential damages incurred due to
4   mis-fabrication, shorted material or delays in schedules
    caused by other agencies.

5   ¶14- It is the building's purchaser's responsibility to
    obtain experienced personnel, proper tools and equipment
6   to erect this building in a safe [sic] competent and
    professional manner

7

8   (Id.).  The letter Plaintiff sent with the executed purchase order

9   and bill of values clarified that "the basis of this purchase order

10  is that Frontier Steel will provide all the components required of

11  specification section 13122 metal building systems."  (Id.).

12      Plaintiff cites *WSS Industrial* for the proposition that

13  Defendant's submission of shop plans was sufficient to bring

14  Defendant within the purview of section 7026.  (MSJ at 8).  In *WSS*

15  *Industrial*, a general contractor accepted a steel subcontractor's

16  bid to perform steel work on a construction project.  162. Cal.

17  App.4th at 585-86.  The steel subcontractor's bid entailed, among

18  other tasks, preparation of shop drawings and procurement of anchor

19  bolts.  At the time the steel subcontractor prepared the shop

20  drawings and ordered the anchor bolts, it was unlicensed.  The

21  steel subcontractor later obtained a license.  The trial court

22  denied the general contractor's motion for nonsuit pursuant to

23  section 7031, holding that the work performed while the steel

24  subcontractor was unlicensed– preparation of the shop drawings and

25  procurement of the anchor bolts –did not require a license.  *Id*. at

26  585.  The California Court of Appeal reversed, holding that it was

27  improper for the trial court to segregate the steel subcontractor's

28  completion of shop drawings and ordering of anchor bolts from the

1    overall purpose of the contract, which unquestionably required a

2    contractor's license. *Id.* at 592-93. Defendant distinguishes *WCC*

3    *Industrial* on the grounds that, in addition to preparing shop

4    drawings, the steel subcontractor in *WCC Industrial* also contracted

5    to build the structures depicted in the drawings. *See WCC*

6    *Industrial*, 162 Cal. App. 4th at 592-93.

7         *WCC Industrial* did not concern the threshold question of

8    whether the plaintiff was a "contractor" for purposes of the

9    project. Rather, the central issue in *WCC Industrial* was whether

10   work the plaintiff performed before it obtained its contractor's

11   license was severable from the tasks which required licensure and

12   thus compensable notwithstanding section 7031. Contrary to

13   Plaintiff's assertion, *WCC Industrial* does not resolve the issue of

14   whether shop drawings for structural components of a building

15   require a contractor's license.

16        Although *WCC Industrial* does not establish that completing

17   shop drawings, without more, is sufficient to establish that an

18   entity is a "contractor," the *WCC Industrial* Court's reasoning and

19   the authorities cited in the opinion suggest that an entity that

20   prepares shop drawings pertaining to a building's structural

21   composition and fabricates materials purportedly fit for erecting

22   the structure in compliance with a project's engineering

23   specifications and applicable state laws meets the definition of a

24   contractor. The *WCC Industrial* Court reasoned that "the public has

25   a right to expect the party designing [shop drawings]...will, at a

26   minimum, have the qualifications required and to possess a valid

27   contractor's license;" this language recognizes that the policy

28   interest underlying the CSLL would be thwarted if unlicensed

**13**

entities are permitted to design buildings and provide custom-fabricated materials purportedly in compliance with relevant California building codes. *Id*. at 593.

*WCC Industrial*'s citations to *Banis Restaurant Design, Inc. v. Serrano*, 134 Cal. App. 4th 1035, 1044 (Cal. Ct. App. 2005) and California Business and Professions Code sections 6737.3 and 6731 focused on design services, not physical erection of the building. In *Banis*, the California Court of Appeal held that an entity that prepared shop drawings and provided building materials, but did not perform or offer to perform any physical construction tasks, was acting as a contractor within the meaning of section 7026:

> Plaintiff's complaint and contract describe work that comes within the statutory definition of a contractor. According to plaintiff's complaint, it provided more than $ 1.7 million of labor, materials, equipment, and services to defendant Serrano for its restaurant project. The contract specified this work as including drawings for electrical and plumbing plans, drawing plans for a reflected ceiling, and coordination of the architect, electrical engineers, mechanical engineers and structural engineers. Through its own efforts and those of others, plaintiff thereby undertook to "construct," "alter," "add to," "subtract from" and/or "improve" defendant's project. (See § 7026.) In short, plaintiff was a contractor, and section 7031 bars plaintiff's suit for compensation.

134 Cal. App. 4th at 1044. *WCC Industrial* cited *Banis* for the proposition that design services "reflect[] coordination of the architect and engineers" and thus constitute the work of a contractor. 162 Cal. App. 4th at 591-92.[3]

Similarly, *WCC Industrial*'s reference to California's engineering statutes shows that Court's focus was on design

---

[3] Subsequent to *Banis*, the California Court of Appeal held that certain construction management services do not require a contractor's license. *See Bolotin*, 172 Cal. App. 4th at 948.

**14**

services.  *WCC Industrial* noted that, pursuant to California

Business and Professions Code section 6730 *et seq.*, design drawings

for buildings generally must be prepared by licensed engineers.

CAL. BUS. & PROF CODE. §§ 6730, 6731 (civil engineering), 6731.5

(electrical engineering), 6731.6 (mechanical engineering).[4]

Section 6737.3 permits licensed contractors to prepare shop

drawings without obtaining the requisite mechanical or electrical

engineering licenses in certain situations.  CAL. BUS. & PROF CODE.

§ 6737.3.[5]   As the *WCC Industrial* Court's citation to section

6737.3 implies, it would be anomalous for California law to permit

an entity that is neither a licensed engineer nor a licensed

contractor to design structures that the public relies on to be

safe.[6]

The reasoning and analysis of *WCC Industrial* and *Banis* suggest

that an entity that contracts to prepare shop drawings depicting a

building's structural design and to fabricate building materials

that are designed to be incorporated into a structure in compliance

with the requisite architectural and engineering specifications of

[4] At oral argument, Defendant represented that a licensed engineer prepared the design drawings for the Project.  There is no record evidence of this assertion. Defendant cites no authority for the proposition that an entity that is a licensed engineer is exempt from the licensure requirements of the CSLL where the entity also meets the definition of a contractor.

[5] An exemption for civil engineering tasks is conspicuously absent from section 6737.3.   In *WCC Industrial*, the contractor's preparation of shop drawings constituted the practice of civil engineering.  *See* Cal. Bus. & Prof. Code 6731 ("Civil engineering embraces...the preparation or submission of designs, plans, and specifications" in "connection with fixed works for framed and homogenous structures [and] buildings").

[6] *WCC Industrial's* suggestion that Section 6737.3 provides exemptions for civil engineering tasks is curious, as section 6737.3 only contains express references to mechanical and electrical engineering tasks.   No published California authority holds that section 6737.3 exempts licensed contractors from licensing requirements related to civil engineering tasks.

the project is a contractor within the meaning of section 7026. *But see Steinbrenner v. J. A. Waterbury Constr. Co.*, 212 Cal. App. 2d 661, 665-65 (Cal. Ct. App. )(entity that prepared shop drawings and manufactured custom doors, trim, and cabinets held exempt from licensure pursuant to Cal. Bus. & Prof. Code § 7052: "This chapter does not apply to any person who only furnishes materials or supplies without fabricating them into, or consuming them in the performance of, the work of the contractor").[7] Assuming *arguendo* that something more is required in order for an entity hired to prepare structural shop drawings and manufacture custom steel framing components to be considered a contractor, the record demonstrates that Defendant's rights and obligations under the parties' contractual agreement establish that Defendant was acting as a contractor on the Project.

Pursuant to paragraph 13 of the purchase agreement, in the event "*any* corrections of mis-fabrication" were required, Defendant had the right to "perform the work...itself" or to authorize Plaintiff to perform the work. (Stephen Davis Decl., Ex. E) (emphasis added). Further, the contract *required* that any corrections of mis-fabrication be approved by Defendant in writing and "performed as directed" by Defendant prior to the work being done. Affording the words of this provision their ordinary meanings, Defendant retained broad authority to perform repairs to the Project's structure and to direct performance of such work by

---

[7] Defendant belatedly contends, in its supplemental brief ordered by the court on a discrete issue, that it is entitled to the exemption embodied in section 7052. (Supplemental Brief at 12-13). As discussed below, the parties' agreement establishes that Defendant contracted to "perform work" in connection with "any corrections of mis-fabrication" and thus is not entitled to the exemption provided in section 7052.

1  others.  *See California State Auto. Asso. Inter-Insurance Bureau v.*
2  *Warwick*, 17 Cal. 3d 190, 195 (Cal. 1976) ("the word 'any' is broad,
3  general, and all embracing").  By retaining broad authority to
4  perform work or direct the performance of work on the Project,
5  Defendant undertook by contract to alter, repair, or improve
6  portions of a building within the meaning of the CSLL. CAL. BUS. &
7  PROF. CODE § 7026 (2010).  Defendant's contractual authority to
8  effect alterations or repairs to the materials it provided was not
9  merely incidental to the parties' agreement, as a fundamental
10  purpose of the contract was for Defendant to provide materials fit
11  for constructing the building in compliance with the Project's
12  engineering specifications.  *Compare WSS Industrial*,162 Cal. App.
13  4th at 592-93 (holding that preparation of shop drawings and
14  procurement of materials before contract were tasks integrally
15  related to purpose of construction contract and could not be
16  severed) *with Johnson v. Mattox*, 257 Cal. App. 2d 714, 719 (Cal.
17  Ct. App. 1968) (sale of tractors and mowers provided in
18  construction contract held incidental to fundamental purpose of the
19  contract and thus severable).  As Defendant lacked a contractor's
20  license at the time it performed work under a contract which
21  required licensure, Plaintiff is entitled to recover all
22  compensation it paid to Defendant for such work. CAL. BUS. & PROF.
23  CODE § 7031(b).  Plaintiff's motion for summary judgment on the its
24  cause of action for disgorgement under section 7031(b) is GRANTED.
25  **B. Summary Judgment on Defendant's Counterclaim**

26      Defendant's counterclaim seeks compensation for amounts owed
27  for "design and engineering services" rendered by Defendant to
28  Plaintiff in connection with the Project.  (Doc. 89 at 8-9).

**17**

Because, as discussed above, Defendant entered into a contract that required a contractor's license, and because it is undisputed that Defendant was not a duly licensed contractor at all times relevant to this action, Plaintiff is not entitled to recover any compensation.  CAL. BUS. & PROF. CODE § 7031(a). Accordingly, Defendant's motion for summary judgment on its counterclaim is DENIED, and Plaintiff's motion for summary judgment on the counterclaim is GRANTED.

## ORDER

For the reasons stated, IT IS ORDERED:

1) Plaintiff's motion for summary judgment on Plaintiff's second cause of action pursuant to section 7031(b) is GRANTED;

2) Plaintiff's motion for summary judgment on Defendant's counterclaim is GRANTED;

3) Defendant's motion for summary judgment is DENIED; and

4) Plaintiff shall submit a form of order consistent with this Memorandum Decision within five (5) days of entry of this order.

IT IS SO ORDERED.

**Dated:   November 2, 2010**          _____/s/ Oliver W. Wanger_____
                                       UNITED STATES DISTRICT JUDGE

**18**